IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Conrad Burke,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:20cv897 (LMB/JFA)** |
| | ) | |
| **J.D. Oates III, et al.,** | ) | |
| **Defendants.** | ) | |

MEMORANDUM OPINION

Plaintiff Conrad Burke ("plaintiff" or "Burke") initiated this civil action under 42 U.S.C.

§ 1983, alleging that Warden J.D. Oates III ("Warden Oates"), J. Schnur, R.N. ("Schnur" or

"defendant Schnur"), and Health Services Director J. Dillman ("Director Dillman")[1] (collectively

"defendants") violated his constitutional rights by failing to provide him a cane that had been

ordered for him by a medical professional. [Dkt. No. 1]. Now before the Court are two motions

to dismiss—one filed by defendant Schnur [Dkt. No. 13], and a second filed by Warden Oates

and Director Dillman [Dkt. No. 17]. Each motion was accompanied by a Roseboro[2] warning

instructing plaintiff of his right to respond [Dkt. Nos. 15, 19], which plaintiff has done [Dkt. Nos.

20, 23]. The motions are thus fully briefed and ready for resolution. For the reasons that follow,

each motion will be granted.

---

[1] In his complaint, plaintiff identified Dillman as "Health Services Director Illegible Signature."
[Dkt. No. 1]. The Attorney General of Virginia accepted service on behalf of this defendant and
provided his name in one of the two motions to dismiss addressed in this Memorandum Opinion.
[See Dkt. No. 18]. The Clerk will be directed to update the docket to reflect this information.

[2] See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

**I**

The allegations in the complaint are assumed true for the purpose of ruling on defendants' motions to dismiss. In October 2019, plaintiff was seen by a "Dr. Fontaine" at Deerfield Correctional Center ("DCC"). [Dkt. No. 1] at 5, 6. Plaintiff expressed that he experienced pain while walking and standing, suffered from a limp, and had previously fallen down due to his back giving out. Id. at 5. As a result, Dr. Fontaine informed plaintiff that "he would receive a walker for ambulation, x-ray of hip & spine and referral to ortho at MCV." Id. On October 28, 2019, plaintiff was seen by a "Dr. Harris," who stated that it was "o.k. to issue plaintiff a cane." Id. In January 2020, plaintiff was seen by the "MCV" orthopedic specialists Dr. Fontaine had recommended. Id. Like Dr. Fontaine, the specialists at that facility recommended that plaintiff use a cane as needed. Id.

In the same month, plaintiff filed a complaint grieving the fact that he had not yet been issued a cane or walker. Id. Defendant Schnur responded to the complaint, stating that "PT [would] eval[uate] [plaintiff's] need for a cane." Id. at 6. Dissatisfied with the delay in receiving a device to help him walk, plaintiff appealed Schnur's response. Id. Warden Oates responded on February 26, 2020, indicating that, as of February 13, 2020, prison officials had ordered a cane for him and that there was no evidence that plaintiff's treatment had been delayed. Id.

Plaintiff appealed the warden's response, expressing frustration that he had been approved for a cane since October 2019 but that the cane was not ordered until February 2020. Id. On March 18, 2020, the "Health Services Director responded, stating [plaintiff's] grievance was unfounded and that [DCC] physicians advised [plaintiff] of [his] orthopedic treatment plan." Id. On July 17, 2020, plaintiff was transferred to Sussex II State Prison and still had not received the cane or walker that had been recommended for him. Id. at 7.

2

**II**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).  A complaint must therefore allege facts in support of each element of each claim a plaintiff raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  Iqbal, 566 U.S. at 678.

**III**

The complaint alleges defendants violated plaintiff's rights under the Eighth Amendment and Virginia state law but, for the reasons that follow, the allegations are insufficient to survive defendants' motions to dismiss.

**A.      *Eighth Amendment***

The basis of plaintiff's Eighth Amendment claims is that defendants failed to act to fulfill the orders or recommendations of prison and outside medical professionals, thereby causing plaintiff to suffer pain and immobility.  To state a claim based on medical care in a prison, a complaint "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Thus, the complaint must allege two distinct elements to support a claim.  First, it must allege the existence of a

3

sufficiently serious medical need. A need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Second, the complaint must allege that the defendant was deliberately indifferent to the plaintiff's serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation. See Estelle, 429 U.S. at 106. Instead, "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 225-26 (4th Cir. 2016)). A prisoner's disagreement with medical personnel over the course of his treatment is inadequate to state a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011).

The complaint is deficient with respect to the second element of the test, for there are no allegations which support an inference that defendants were deliberately indifferent to plaintiff's needs. This conclusion is based in part on the fact that plaintiff has submitted documents that undercut the complaint's allegations regarding the time institutional and outside doctors ordered a cane for him. And in the context of a motion to dismiss, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). The exhibits plaintiff submitted with the complaint confirm that plaintiff was merely *recommended* a cane and do not indicate that one had been ordered or deemed necessary before his January 2020 grievance. [See Dkt. No. 1] at 15 (grievance in which plaintiff states "I have been denied the specialist's recommendations for the

4

... cane"); Id. at 21 (medical record stating that plaintiff "wants a walker"); Id. at 23 (medical

record showing "Cane PRN" in "Treatment and Medications Recommended" field).[3]

Accordingly, to the extent defendants failed to order or delayed providing a cane for plaintiff,

there is no indication that they did so in contravention of the order of a medical professional.

In light of the above, plaintiff's argument that defendant Schnur violated his rights when

she failed to take "action to properly investigate plaintiff's records that indicate[d] treatment [had

already been] ordered by [an] institutional doctor" is insufficient to make out an Eighth

Amendment violation. [Dkt. No. 1] at 9-10.[4]  The other allegations similarly fail to support a

claim against defendant Schnur.  The complaint merely alleges that, in response to plaintiff's

January 2020 grievance, Schnur indicated that plaintiff had already been scheduled to receive

physical therapy and an orthopedic shoe evaluation—measures that plaintiff's doctors had

recommended he receive.  Schnur allegedly advised plaintiff that his need for a cane—another

recommended treatment—would be evaluated during his physical therapy sessions.

The complaint does not allege that Schnur was responsible for scheduling medical

treatments or effectuating doctors' orders for medical devices.  Even if Schnur held those

responsibilities, plaintiff's claim against her would be merely based on a disagreement over the

course of treatment he was receiving, which is not a claim of constitutional significance.  Indeed,

although plaintiff may have preferred to have a cane, defendants' failure to provide one while

---

[3] Additionally, contrary to plaintiff's position, the complaint does not clearly allege that institutional or outside doctors ordered plaintiff a cane in October 2019.  It claims first that Dr. Harris "ordered that it was o.k. to issue plaintiff a cane" and later takes a more uncertain position, alleging that Doctor Harris "ordered/said o.k. to issue cane." [Dkt. No. 1] at 5-6.

[4] In his opposition to the motion to dismiss, plaintiff relies on a contradictory argument; he concedes that Schnur *did* consult relevant records before denying his grievance and therefore "should have seen that [an] order for [a] cane already existed back in Oct. 2019." [Dkt. No. 23] at 2.  Because plaintiff's exhibits undermine this allegation, this theory will be rejected. See Veney, 293 F.3d at 730.

plaintiff was receiving several other doctor-recommended treatments was not violative of the Eighth Amendment. Cf. Kiernan v. McKinley, No. 1:09cv387, 2009 WL 2175639, at *3 (E.D. Va. July 20, 2009) (dismissing Eighth Amendment claim against prison nurse who provided "other anti-inflammatory treatments" instead of "one specific type of treatment" that had been recommended for the plaintiff by a rheumatologist).

To the extent Schnur could have intervened on plaintiff's behalf, the complaint still fails to state a claim. With respect to this issue, Schnur's knowledge that plaintiff was receiving some degree of care at the time she responded to his grievance is important. Had Schnur believed plaintiff was not receiving any treatment and failed to act, an Eighth Amendment claim against her might have been viable. See, e.g., Gordon v. Schilling, 937 F.3d 348, 357 (4th Cir. 2019) (denying defendant's motion for summary judgment where there was evidence defendant knew plaintiff had hepatitis and was aware he "was not being treated for it"); see also Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) (distinguishing between instances in which prison personnel rely on the acts or advice of medical staff and those in which prison personnel defer to medical staff's decision *not to treat* an inmate, finding liability potentially appropriate in the latter scenario). In the absence of such an allegation, there is no basis for an Eighth Amendment claim against defendant Schnur.

The complaint equally fails to state any Eighth Amendment claim against Warden Oates or Director Dillman. The theory underlying the claims against these defendants is one of delayed provision of medical attention. [See Dkt. No. 1] at 8-9 (claiming defendants "caus[ed] plaintiff to be denied and delayed medical care for months on end"). The complaint specifically alleges that, after receiving defendant Schnur's grievance denial, plaintiff appealed the decision to Oates, who upheld the denial and stated that a cane had been ordered as of February 13, 2020. Id. at 6. Plaintiff appealed once more, but Director Dillman also concluded that the original

6

grievance was unfounded. Id. As a result of these defendants' inaction, plaintiff claims he spent "over half a year" without the cane he had been prescribed. Id. at 11.

"[I]ntentionally ... delaying access to medical care" can form the basis of an Eighth Amendment claim. See Estelle, 429 U.S. at 104-05. Here, though, there is simply no allegation to support an inference that Oates or Dillman caused any appreciable delay in plaintiff's care, intentionally or otherwise. Even ignoring the fact that plaintiff's exhibits establish that he was not "ordered" a cane in October 2019, there is no allegation that either Warden Oates or Director Dillman were aware of plaintiff's need for the device until they received his grievance appeals in February and March 2020. Accordingly, any delay that might have been caused by Oates or Dillman was short.

The brief nature of the delay combined with the lack of allegations that plaintiff had previously sought assistance from Oates or Dillman undercuts any potential Eighth Amendment claim against them. Cf. Price v. Carey, No. 91-6643, 1992 WL 34208, at *4 (4th Cir. Feb. 26, 1992) (deeming eight-month delay for hernia surgery insufficient to constitute Eighth Amendment violation where prisoner "did not present any information" to defendant "to indicate that his situation was an emergency mandating treatment"); contra Garrett v. Elko, No. 95-7939, 1997 WL 457667, at *1 (4th Cir. Aug. 12, 1997) (recognizing Eighth Amendment violation where prisoner's surgery was delayed for four years in the face of continual "complaints of intense pain, anxiety, and limited mobility").

Finally, to the extent plaintiff believes defendants may be liable to him for their denials of his grievances, he is incorrect. See Atkins v. Maryland Div. of Corr., No. PWG-14-3312, 2015 WL 5124103, at *6 (D. Md. Aug. 28, 2015) ("The mere fact that [a warden] denied [the plaintiff's] grievances does not alone impose liability."); Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the

7

violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983").

**B.     _Respondeat Superior_**

The complaint next seeks relief against Armor Correctional Health Services ("Armor") under a theory of <u>respondeat superior</u>. [Dkt. No. 1] at 11. The claim is deficient for several reasons, the first of which is that the complaint does not explicitly name Armor as a defendant in this action. <u>See</u> Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); <u>cf.</u> <u>Londeree v. Crutchfield Corp.</u>, 68 F. Supp. 2d 718 (W.D. Va. 1999) (granting motion to dismiss for individuals who were not named as defendants in complaint but were nevertheless served), <u>aff'd</u>, 210 F.3d 361 (4th Cir. 2000). Second, a private corporation such as Armor cannot be held liable "for torts committed by [its employees] when such liability is predicated solely upon a theory of respondeat superior." <u>Austin v. Paramount Parks, Inc.</u>, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." <u>Id.</u> (citations omitted). The complaint does not allege facts that would support a claim against Armor under this theory.

**C.     _Virginia State Law – Gross Negligence_**

Finally, plaintiff seeks relief under Virginia state law, claiming that defendants' acts and omissions constituted gross negligence, entitling him to relief. [Dkt. No. 1] at 10-12. The Court's basis for jurisdiction over any such claim is 28 U.S.C. § 1367, which grants federal district courts supplemental jurisdiction over "all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). That statute further provides, though, that a district court has discretion to decline such supplemental

8

jurisdiction where it "has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3).  The Supreme Court has stated that, in general, in an action where all federal claims are dismissed before trial, pendent state law claims "should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  The Fourth Circuit has echoed this sentiment, declaring "a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction." Arrington v. City of Raleigh, 369 F. App'x 420, 423 (4th Cir. 2010).  For these reasons, having determined that plaintiff's federal claims will be dismissed, this Court declines to exercise supplemental jurisdiction over plaintiff's state law gross negligence claims.

## IV

For the reasons stated above, defendants' Motions to Dismiss will be granted through an Order that will accompany this Memorandum Opinion.

Entered this $5^{\underline{th}}$ day of May 2021.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge